OPINION. Van Fossan, Judge: The first issue presents the question whether or not the corporation is taxable on the amounts in excess of OPA ceiling prices paid by the seven “new” customers under their agreements with Biehl to obtain preferences in quantity, deliveries, and speed of shipment of goods manufactured by the corporation and to receive the benefit of other special services rendered by him. The facts, in brief, are these: In the summer of 1941 Ernest Biehl, sales agent and assistant of Berger, president of the petitioner corporation, with the approval of Berger, entered into agreements with seven concerns providing that he would secure large quantities of merchandise manufactured by the corporation, obtain preferential and expeditious deliveries thereof, and render other special services, in consideration of a commission or premium of a few cents a yard over the OPA ceiling price charged to all regular customers. The arrangement was made on the specific understanding that Biehl would pay to Berger 90 per cent of the profits, Biehl turned over to Berger his share of the profits as agreed. All such payments were in cash. Petitioner Sherin knew nothing of the agreement until OPA inspectors examined the corporation’s books. Thereupon he disavowed any connection with or responsibility for such practices. The standard form of contract was used and the ceiling prices of goods were stated in such contracts with the seven new customers as well as in the contracts made with other customers of the corporation. The payments of the stated prices were made to the United Factors in identical fashion and settlements were made, all on the ceiling price basis. The corporation’s books show no entry in any way relating to the Biehl arrangement with the seven firms. The respondent argues that Berger’s activities in respect to the Biehl agreements and the performance by the corporation were in his capacity as president of the corporation and that, therefore, the corporation is responsible for such actions on his part for the tax consequences thereof. We do not agree with the respondent. The corporation, as such, never authorized the illegal* arrangements. It never received, directly or indirectly, any of the fruits of such transactions. Albeit Berger owned 50 per cent of the corporate stock, Sherin owned an equal amount, and, on learning of Berger’s action, he repudiated the illegal agreements. The corporate entity may not, in these premises, be disregarded. It has often been said that command over the income is a primary test of taxability. Here the corporation never had command over the illegal commissions. In accepting from Biehl 90 per cent of the excess payments, Berger acted for himself as an individual and not on behalf of Sherin, the other stockholder. Certainly it can not be said on the record here that he intended to act for the corporation, nor may any doctrine of estoppel be invoked to close the corporate mouth. The action of the respondent in including the sums of $26,905.50 and $74,502.50 in the corporation’s income for the years 1941 and 1942, respectively, is disapproved. Cf. Wallace H. Petit, 10 T. C. 1253. With the above holding as to income, the Government’s case of fraud falls so far as the corporation is concerned. The second and third issues raise the question of fraud in connection with Berger’s failure to report the $26,905.50 received by him from Biehl in 1941. The original return for 1941 was timely filed by Berger on March 12, 1942. It was dated March 11, 1942. It did not include the $26,905.50 received from Biehl and showed a total tax of $1,353.58 due. On August 13, 1943, Berger'filed an amended or “corrected” return in which he included the said $26,905.50 as “income from sundry fees.” The amended return was sworn and subscribed to on June 4, 1943, and showed a total tax of $13,225.95. On June 1, 1943, he paid the fine for violation of the price schedules fixed by OPA. Petitioner Berger contends (1) that since he paid the tax due in the amended return for 1941 and no deficiency was determined by the Commissioner for that year, the respondent is'precluded from asserting a fraud penalty, and, (2) that he considered the transactions a joint venture whose fiscal year ended in 1942. In the recent case of Aaron Hirschman, 12 T. C. 1223, we held that the petitioners, having originally filed fraudulent income tax returns, might not, by the subsequent filing of amended returns and the payment of the taxes due, eliminate the fraudulent elements from their o'riginal returns and thereby bar the respondent from assessing in respect thereto 50 per cent additions to the tax for fraud under section 293 (b) of the Internal Revenue Code. On the authority of the Hirschman case, therefore, we hold that the Commissioner is not precluded from asserting the fraud penalty in the case at bar. We hold and have found as a fact that the petitioner Berger was guilty of filing his original income tax return for 1941 with intent to'evade tax and that his return, therefore, was false and fraudulent. On June 1, 1943, Berger paid his fine in the OPA proceeding. On June 4,1943, he executed his amended or “corrected” return for 1941. On the same day he executed his return for 1942, including therein the $74,542.50 received by him from Biehl during that year. The juxtaposition of these dates is highly significant. Upon the final determination of the OPA case it became apparent that the execution of the “corrected” return for 1941 and the simultaneous execution of the 1942 return, both including the amounts received from Biehl, were clear admissions of the propriety of returning these amounts as income during the respective calendar years. Berger should have included the $26,905.50 so received in his original 1941 return, but he failed to do so. This leaves only the argument that he “believed” that the amounts received by him and Biehl were from a joint'venture whose fiscal year ended in 1942. This argument was not even presented in the petitioners’ original brief, but was first made in the reply brief. There was testimony to the effect that Berger had some such notion, but we did not give it sufficient credence to find it as a fact. All the evidence points to the opposite conclusion. Biehl reported his share of the receipts in his returns for both 1941 and 1942. Berger is apparently a shrewd business man, fully cognizant of tax situations. It is not reasonable to suppose that Biehl, who was so closely associated with Berger in business and was his assistant, would make such return without Berger’s knowledge. We have found as a fact that Berger’s income tax return for the year 1941 was false and fraudulent and filed with intent to evade tax. The next issue involves the proper rate of depreciation on machinery and equipment of the corporation during the taxable years. The petitioner does not challenge the Commissioner’s right to alter the rate of depreciation when the facts warrant his so doing (see Lincoln Cotton Mills, 15 B. T. A. 680; Big Four Oil & Gas Co. v. Commissioner, 83 Fed. (2d) 891, affirming 28 B. T. A. 61), but bases his argument on the theory that the Commissioner improperly disallowed the depreciation’ claimed on the excessive use of such physical assets during the war years. The petitioner corporation has shown in general terms that the plant was operated from 131 to 168 hours a week, that the turnover of employees was high, that the machinery was abused by the new and unskilled labor, and that adequate repairs could not be obtained. However, it did not prove that such factors actually resulted in a shortening of the remaining life of the machinery and equipment and thus entitled the petitioner to an amount of depreciation greater than that allowed by the respondent. In Copifyer Lithograph Corporation, 12 T. C. 728, we had the precise question before us. There we held that, where the taxpayer employs the straight line method of depreciation, as here, evidence of increased usage and other operating conditions do not, in the absence of a showing that such factors actually resulted in a shortening of the remaining useful life of the depreciable assets, warrant an allowance of abnormal or accelerated depreciation. Upon examination of the corporation’s returns the Commissioner discovered that the petitioner had been applying a rate of 7% per cent (or a 13-plus-year life) to its calculations of depreciation, although Bulletin F prescribes a life of 15 or more years for comparable equipment. He then determined that the rate should be decreased materially and made his computations accordingly. The petitioner has failed to demonstrate that the respondent has not allowed a reasonable amount of depreciation for the years in question. Therefore, his action will not be disturbed. In the fifth issue the petitioner corporation asks for an increase in equity invested capital represented by the issuance of $3,200 in the corporation’s stock to Berger and to Sherin on June 30 and on December 31,1942, (or $6,400 to each stockholder) for unpaid salaries of equal amounts. The respondent challenges the facts on which petitioner’s request is based, contending the transaction was a donation to capital. The record shows that the stock was issued for unpaid salaries and was not, as respondent suggests, a donation to capital. Berger and Sherin both accounted for the income so received in their tax returns. We sustain the petitioner. The sixth issue is factual — how much interest was paid on borrowed capital during 1940 and 1941? We have found from the record that the petitioner expended in this manner $351.37 in 1940 and $1,955.07 in 1941. These sums, therefore, are to be taken into consideration in computing the corporation’s excess profits net income for 1941 and its unused excess profits credit carry-over for 1940. In the seventh issue the corporation claims as expense for traveling and entertainment an item of $3,743. The respondent allowed $743, disallowing the balance. We have found that the sum of $2,000 is a reasonable allowance for such expenses. This item will be used in recomputing the corporate income. In the eighth issue respondent increased petitioner Berger’s income for 1944 in the amount of $4,200, due to his action in disallowing an item of $7,000'claimed by the partnership known as Eclipse Fabrics Co. for expenses of traveling and entertainment. The record made does not justify disturbing the respondent’s action. Decisions will he entered under Rule 50.